UNITED STATES of America,
Plaintiff,

v.

NATIONAL BANK OF COMMERCE,
Defendant.

Civ. A. No. 15250.

United States District Court
E. D. Louisiana,
New Orleans Division.

Oct. 15, 1965.

Sherin V. Reynolds, Tax Division, Department of Justice, Washington, D. C., Louis C. LaCour, U. S. Atty. Eastern District of Louisiana, New Orleans, La., Ernest N. Morial, Asst. U. S. Atty., Eastern District of Louisiana, New Orleans, La., for plaintiff.

Louis C. Guidry, New Orleans, La., for defendant.

AINSWORTH, District Judge.

This case involves a claim by the United States against the National Bank of Commerce (hereafter called NBC) for judgment against the defendant in the sum of $814.79 for the latter's refusal to honor an Internal Revenue tax levy served upon it, against funds of one of its customers claimed to be on deposit in the bank.

Both parties have moved for summary judgment under Rule 56, Fed.R.Civ.P., and there is no genuine issue as to any material fact. These motions are before us for determination.

On September 20, 1963 plaintiff made assessments against the Quality Construction Company, Inc. (hereafter called

taxpayer) for corporation income taxes due for taxable periods in 1959 and 1960 for $7,062.26 and $337.74, respectively. On the same date plaintiff demanded payment from taxpayer who failed to pay.

On February 4, 1964 a notice of tax lien relative to the assessment was filed with the Clerk of Court in Jefferson Parish, Louisiana, taxpayer's domicile. On February 7, 1964 a notice of levy together with a copy of the tax lien were served by plaintiff on NBC, in which bank taxpayer maintained a general account and a payroll account. At that time taxpayer's payroll account showed a credit of $814.79, but the general account was overdrawn $1,516.94. The defendant bank contends that the credit in the payroll account was subject to the overdraft of $1,516.94 in the general account and therefore the bank was not in possession of any property belonging to the taxpayer.

Plaintiff contends that on the date of the service of its tax levy on the bank, the bank possessed funds belonging to the taxpayer in the amount of $814.79, which is subject to its lien. (See 26 U.S.C.A. § 6332.)

■ The bank's position in essence is that the general and payroll accounts of the taxpayer, Quality Construction Company, are in fact one account; that for the convenience of its corporate custom-

ers such as Quality, it maintains two accounts. This banking practice is verified by the affidavit of the manager of NBC's branch office where taxpayer maintained its account.[1] Therefore, if the two accounts are maintained merely for the customer's convenience, and are treated as one account for banking purposes, the operation of debiting or crediting either account against the other is merely a bookkeeping transaction. The overdraft in one account merely represents a debit to be made in the second account. The entire transaction is handled as if both accounts represented the debit and credit columns of a single account. Accordingly, when the levy was served upon the defendant the taxpayer's net account showed a credit of $814.79 and a debit of $1,516.94, which means that there was a deficit in the account and the taxpayer was actually indebted to the bank for $702.15, the net overdraft. Thus, the bank is correct that it did not possess any property or rights to property subject to the government's levy.[2]

■ While the foregoing reasons are sufficient to decide this case, we find that the bank's plea of compensation (setoff) is likewise well taken. The United States, relying on Bank of Nevada v. United States, 9 Cir., 1958, 251 F.2d 820, cert. den., 356 U.S. 938, 78 S.Ct.

1. Mr. Belloni, the manager, states in his affidavit:
"That in order to facilitate the handling of payrolls by some of the customers of the Bank, it is usual to have the customer open two separate accounts, one know as the General Account, and the other as the Payroll Account. That it is possible for one of the accounts to become overdrawn through various reasons and such overdrafts approved for payment upon consideration of the balance in the other account and the merit of the principals involved. Especially is this true where the persons authorized to sign on each account are the same persons, as was the case in this instance."

2. The debit against the payroll account was not made until February 21, 1964, after the tax levy was made against the bank.

However, this delay is explained by Mr. Belloni in his affidavit. On the date the levy was served a deposit was made by taxpayer consisting of two checks for $10,212.48 and $45.44, respectively. This was on Friday, and there was no clearing date until the following Monday, February 10, 1964, at which time the check for $10,212.48 was returned because it had not been properly signed by the drawer. The bank waited before making its debit entry to the payroll account, believing that taxpayer would procure the proper signatures and redeposit the check. However, by February 21, 1964 the affiant was convinced that the taxpayer did not intend to cover the overdraft in the general account by redepositing the $10,-212.48 check. Affiant then authorized the debit to the payroll account and credit to the general account for $814.79.

780, 2 L.Ed.2d 813 (1958), contends that NBC did not exercise its right of setoff until after the government's levy was served on it. Bank of Nevada is inapplicable to the facts here because Louisiana law does not require exercise of setoff, but it occurs through "compensation" by operation of law. The claim of the United States in Bank of Nevada, supra, was based on an agreement which gave the bank the option of setoff under certain specified contingencies.

In Louisiana, the claim of setoff is treated in civilian terminology as "compensation." Compensation is defined in Article 2207, LSA–Revised Civil Code:

"When two persons are indebted to each other, there takes place between them a compensation that extinguishes both the debts, in the manner and cases hereafter expressed."

 Compensation occurs in Louisiana by the mere operation of law even unknown to the debtors. See Article 2208, LSA–Revised Civil Code. Therefore, even if we treated the payroll and general accounts as two entirely separate accounts the defendant would still prevail under the Louisiana provisions for legal compensation, and the credit in one account would be extinguished by the overdraft debit in the other.

Bank of Nevada, supra, was based on the court's rejection of the bank's contention that as a "general rule" a bank has a "general lien" upon deposits. There is no inchoate agreement here, nor is the defendant, NBC, claiming a general lien under some elusive general rule. The bank asserts a legal right afforded to it by virtue of law and it was not necessary for it to do some positive act in order to perfect this right, for as we have seen in Louisiana Civil Code Article 2208, legal compensation takes place "even unknown to the parties."

We hold that whether the accounts herein are treated separately or as a single account, defendant must prevail. There is no genuine issue of material fact and defendant is entitled to judgment in its favor as a matter of law.

Decree accordingly.